## WILLETT v ROWEKAMP

Ohio Appeals, 1st Dist, Hamilton Co

No 5228. Decided April 12, 1937

Henry Beebe, Cincinnati, and Harry Apter, Cincinnati, for appellant.

August A. Rendigs, Cincinnati, and Wessellman & Eyrich, Cincinnati, for appellee.

## OPINION

By ROSS, PJ.

Appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County.

In the petition it is alleged in substance that the appellant had for some time been receiving "Chiropractic manipulations" from appellee, that on the 22nd day of November, 1934, she employed appellee as a chiropractor for a monetary consideration to treat her by chiropractic manipulations "and to endeavor to improve plaintiff's general health and to cause plaintiff to gain weight and feel better physically. That the appellee proceeded to so treat appellant but did not use due and proper care and skill in giving said treatment," in that in manipulating the vertebrae of applicant's spine appellee used such "undue and unusual force and violence as to sprain the plaintiff's left sacroiliac joint"

and that the appellee failed in diagnosing appellant's case to employ X-Rays. It is further alleged that by reason of such mistreatment, appellant suffered severe injuries to her damage.

The defense was in effect a general denial.

At the trial, the court refused to permit accredited physicians and surgeons to testify until they had expressed familiarity with the practices and measures which chiropractors are accustomed to employ in the treatment of their customers.

The theory of the court was, as expressed in its statement prior to. instructing a verdict for the appellee, defendant, that the negligence of the appellee must be shown either by chiropractors, giving the jury the rules which govern chiropractors in general, or by physicians and surgeons who were acquainted with chiropractic practices, giving the jury such rule. to guide them in comparing such standard with the course of conduct followed in the instant case.

We are bound here to accept the theory of the appellant in the trial court. 2 O. Jur. 613. As will later appear herein, our conception of the action is that it may be otherwise considered.

It is necessary, however, in determining whether the court was correct in extending to the appellee the cloak of professionalism to ascertain just what the record shows appellee's status in the professional and scientific world was. We quote from appellee's own statement in the record:

"Q. You were admitted by the Ohio State Board in this State?

A. No, this state does not have a State Board.

Q. Did the State of Ohio admit you to practice?

A. I haven't any license to practice in the State of Ohio.

Q. You haven't any license to practice in the State of Ohio?

A. No, sir.

Q. Where is your license?

A. Well, we have not got no Chiropractors' State Board and we have been fighting for it for quite a number of years and until we get it I don't think the chiropractors in the State of Ohio will have one.

Q. You have to pass an examination in the State of Ohio to practice your profession, do you not?

A. There isn't any chiropractors' State Board to take. There is a medical—I don't

know anything about that—I only practice chiropractory.

Q. What I mean to say is the chiropractors in Cincinnati are licensed, are they not?

A. There might be two or three.

THE COURT: The court does not wish to interrupt, but we are not concerned with that question.

MR. BEEBE: I thought they had to have a license.

MR. RENDIGS: That isn't true.

MR. BEEBE: Then I am wrong.

Q. You graduated from this school at Davenport and came to Cincinnati and opened an office here and are practicing as a chiropractor?

A. Yes, sir."

Was such a person more than a mere layman? We consider that she was not. What right then has she to claim the protection of science and professionalism? We conclude she is not entitled to such protection. Where men and women are engaged in a profession generally recognized by the public to be based upon scientific methods and research, careful study, long experiment, thorough testing, mature deliberations, covering an extended educational period, they are entitled to the protection of the general rule requiring only the skill and care which persons engaged in such a profession are accustomed to use under the same or similar circumstances.

If one so engaged uses the methods and measures usually adopted by those similarly engaged and injury results, he may not be held to respond in damages. But where a group of laymen adopt a certain course of conduct as being proper treatment, unendorsed as generally considered scientific and professional, certainly, the same protection may not be afforded to a member of the group. Merely because the members of this group consider it justifiable to inflict an injury will not furnish any proper standard for a jury to determine what a reasonable, careful and prudent person would do under the same or similar circumstances. Courts must bow to the conclusions of professional science, but they should not be governed in applying the general principles of law by the conclusions of every cult, group, or faction which may unwarrantedly consider it has discovered the panacea for the ills of the human body.

However, the appellee attempted to render treatment which should only have been given by a regularly accredited physician or surgeon. In doing so, she can not complain if she is held to the degree of skill and care which physicians and surgeons, whose place she ventured to fill, would have used under similar circumstances.

The court, therefore, erred in not permitting physicians and surgeons to testify what degree of skill and care was appropriate to the circumstances involved.

In the case of Kueschler v Volgmann, 180 Wis. 238, 31 A.L.R. 826, the court held that chiropractors were required to use the same degree of skill and care required of physicians and surgeons, where they attempt to do the work usually done by such. It is true the court construed a Wisconsin statute, holding persons practicing without a license to such care and skill, but to us it is apparent that such a statute merely expresses the general legal principle which should be applicable.

We are not considering here a case involving two recognized scientific schools of medicine, such as allopaths and homeopaths, where the rule has been laid down that each is to be governed by its own methods, customs and procedure. The appellee is, under the record, entitled to no such consideration. She is to all intents a layman and subject to the rules applicable to laymen, who inflict personal injuries, and entitled to no more liberty or privilege than laymen are accorded.

An interesting question might be presented in such a case as this were we required to determine whether the one year statute of limitations, applying to malpractice cases, applied, or the two year statute applying to personal injuries merely. This would more clearly emphasize the distinction drawn.

In our view, under the circumstances developed by the record, the appellee is responsible for any unwarranted injury she inflicted upon the appellant wilfully or negligently. She has no professional standing whatever. The ordinary rules applicable to negligence and wilful injury apply. The standard is the care which any reasonable person would use under the same or similar circumstances. Some of these circumstances in the instant case being that appellee has professed to be able and willing and competent and has attempted to diagnose and cure a malady in a person coming to her for treatment.

The jury is capable of applying such rule without any expert testimony.

The appellee, however, having attempted a task peculiar to physicians and surgeons must accept the additional burden of performing such task in the manner and with the degree of care and skill which physicians and surgeons are accustomed to use in diagnosis and treatment. If she fails so to do, she is responsible.

The human body constitutes too delicate a mechanism to permit unskilled, unscientific, and unprofessional persons to tamper therewith under the guise of being able to cure malady, disease, or injury. Those who so venture must accept the consequence of their folly or fraud.

Such a position is peculiarly proper when applied to the undertaking under consideration, for through the vertebrae runs the spinal cord, and it is a matter of common knowledge that no more delicate portion of the human body can be considered than that which connects the brain with the multiple termini of the entire nervous system. The results attending mistreatment of the area containing the major nerve centers and this vital communication can be easily imagined to be disastrous and permanent. Accepting the theory of the appellant therefore the court erred, considering the case from a malpractice standpoint, in excluding the evidence, and we conclude, therefore, that the judgment must be reversed and a new trial granted for improper exclusion of evidence; that if necessary the appellant may redraft her petition to state a cause of action based upon simple personal injury, and will be protected in doing so by the decision of the Supreme Court in the case of **Louisville & Nashville Rd. Co. v Greene, Admrx., 113 Oh St 546.** That in any event the appellee is entitled to no more protection than any ordinary layman would be under the same or similar circumstances, but, on the contrary, having assumed to act as a physician or surgeon, she must use the care and skill in diagnosis and treatment usually employed by such.

Judgment reversed and a new trial ordered.

HAMILTON and MATTHEWS, JJ, concur.