**STATE, ex rel. ROSS, Plaintiff, v. GUION, Comm. of Building and Housing, etc., Defendant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24795.  Decided October 26, 1959.

Burke, Haber & Berick, for plaintiff.
Ralph S. Locher, Dir. of Law, Joseph H. Crowley, Chief Counsel, Irving L. Silbert, Asst. Dir. of Law, for defendant.

(DOYLE, PJ, HUNSICKER, J, of the Ninth District. GRIFFITH, J, of the Seventh District, sitting by assignment in the Eighth District.)

**OPINION**

By HUNSICKER, J.

This is an action in mandamus filed in this court.

Helen G Ross, who is the owner of certain property at the southeast corner of Drexmore Road and East 128th Street in the city of Cleveland, Ohio, made application to the commissioner of buildings Mr. Guion (herein called building commissioner), for a permit to erect on her land a one-story building to house a medical doctor, a dentist, and their respective office assistants.

The application complied in all respects with the legal requirements for a professional building of the type and kind permitted in a local retail business district.

The land owned by Mrs Ross was changed, by action of the council of the city of Cleveland, from a two-family residence zone to a local retail business zone, although all other property on that side of the street remains zoned for two-family residences.  The land across the

street from Mrs. Ross is zoned for local retail business, and is used principally for parking purposes for a store and an office building, which businesses face Shaker Boulevard, a street running parallel with Drexmore Road. This street (Shaker Boulevard) is a main highway in this vicinity, and one upon which the Shaker Heights Rapid Transit runs. The land in question in this action is about two blocks from Shaker Square. On the southwest corner of Drexmore Road and East 128th Street is the power plant which supplies heat to the business places of Shaker Square and vicinity. This power plant is a nonconforming use, it having been in operation many years prior to the enactment of the original zoning ordinance.

After Mrs. Ross duly submitted her application for a building permit, the building commissioner refused to grant the permit. Mrs. Ross thereafter appealed to the Board of Zoning Appeals, which board reversed the decision of the building commissioner, and ordered him to issue the permit. Mrs. Ross then requested the permit and it was again refused by the building commissioner. The reason assigned by this commissioner for withholding the permit was that the ordinance which rezoned the Ross lands was invalid, as being spot zoning.

Our problem is first to consider the right of a municipal administrative officer, whose duty is to perform a ministerial act under an ordinance passed by the legislative body of the municipality, to refuse to perform that act for the sole reason that he believes the legislative body has in this matter enacted an invalid ordinance.

In 30 A. L. R. 378, and 129 A. L. R. 941, the subject "Unconstitutionality of statute as defense to mandamus proceeding" is annotated. The general rule, adhered to by the majority of state courts of last resort, is stated in the annotation, at 30 A. L. R. 379, to be that "a public officer whose duties are of a ministerial character cannot question the constitutionality of a statute as a defense to a mandamus proceeding to compel him to perform some official duty, where in the performance of such duty his personal interests or rights will not be affected, and he will not incur any personal liability, or violate his oath of office."

We believe the same rule to be effective when a municipal officer raises such question as to an ordinance duly enacted by the legislative body of a municipality.

The Ohio cases have not directly passed upon this issue. However, in the case of **State, ex rel. State Bridge Commission of Ohio, v. Griffith, etc., 136 Oh St 334,** that court did say, in an action in mandamus to compel the secretary of state to attest a bridge bond issue, under a state statute that required these bonds to be attested by the secretary of state, that he was not entitled to set up the defense of the unconstitutionality of the statute, since he had no personal interest in the controversy. The court, in that case, did pass on the issue so raised on the basis that the matter was of general public interest.

Early Ohio cases, wherein the question herein discussed was considered, indicate to us that Ohio has heretofore followed the general rule as set out above.

In the case of **C., W. & Z. Railroad Co. v. Commissioners of Clinton**

County, 1 Oh St 77, Ranney, Jr., speaking for the court, said, at pages 82 and 83:

"But while the right and duty of interference in a proper case, are thus undeniably clear, the principles by which a court should be guided, in such an inquiry, are equally clear, both upon principle and authority. It is never to be forgotten, that the presumption is always in favor of the validity of the law; and it is only when manifest assumption of authority, and clear incompatibility between the constitution and the law appear, that the judicial power can refuse to execute it. Such interference can never be permitted in a doubtful case. And this results from the very nature of the question, involved in the inquiry. "The legislature is, of necessity, in the first instance, to be the judge of its own constitutional powers. Its members act under an oath to support the constitution, and in every way, under responsibilities as great as judicial officers. Their manifest duty is, never to exercise a power of doubtful constitutionality. Doubt, in their case, as in that of the courts, should be conclusive against all affirmative action. This being their duty, we are bound, in all cases, to presume they have regarded it; and that they are clearly convinced of their power to pass a law before they put it in the statute book. If a court, in such case, were to annul the law, while entertaining doubts upon the subject, it would present the absurdity of one department of the government overturning, in doubt, what another had established, in settled conviction; and to make the dubious constructions of the judiciary, outweigh the fixed conclusions of the General Assembly."

The court in that case, notwithstanding the objection by the commissioners, who viewed the law there under consideration as of doubtful validity, ordered a writ of mandamus to issue. To this same effect are Citizens' Bank of Steubenville v. Wright, Aud., 6 Oh St 318; and Trustees of Cass Township, v. Dillon, Treas., 16 Oh St 38. In each of these latter cases, however, the court did pass upon the constitutionality of the legislation on the basis of the great public interest involved. See also: State, ex rel. Michaels, v. Morse et al, etc., 165 Oh St 599, as to the presumption of constitutionality of a law, which arises when such law is called into question before a judicial tribunal.

Some recent cases in other jurisdictions discuss the question we have here, and all of them follow the general rule announced in the annotations found in A. L. R., supra. In assessors of Haverhill v. New England Telephone & Telegraph Co. (Mass.), 124 N. E. 2d 917, decided March 7, 1955, the court there said, at pages 920 and 921:

" 'It is a general principle that no one can question in the courts the constitutionality of a statute already enacted except one whose rights are impaired thereby.' * * * In general an administrative officer cannot refuse to proceed in accordance with statutes because he believes them to be unconstitutional. * * * He must leave that issue to be raised by the persons who are adversely affected."

And see:

11 Am. Jur., Constitutional Law, Sec. 117, and authorities there cited.
16 C. J. S., Constitutional Law, Sec. 82 b, and authorities there cited.

In applying, then, to this case the general rule set out in the authorities heretofore cited, we must find that the building commissioner is not personally liable when he issues a building permit; he does not pay out public funds for which he may be liable if unlawfully expended; and, so far as the evidence shows, he has no greater legal interest in the issue herein than that of any other citizen.

The majority rule, which prohibits an administrative officer from raising the issue of unconstitutionality of the law which requires him to act, carries with it an exception permitting the defense of unconstitutionality if the act required to be done under that law is a matter of general public interest. This phrase, "general public interest," is not susceptible of accurate definition.

Very few courts have attempted to define "general public interest." It is a practical matter as to whether, under a given set of circumstances, a certain legislative act comes within the meanings ascribed to the phrase. One court said that:

"Legislation for the protection of those who have sustained injuries while engaged in industry is a matter affecting the general public interest."

Akins case, 302 Mass. 562, 20 N. E. 2d 453, at page 457.

Thus, support of the poor has long been recognized as a public purpose. Kelly v. City of Pittsburgh, 104 U. S. 78, at page 81, 26 L. Ed. 658, at page 660. Relief of the unemployed would come within the purview of general public interest. Taxes levied to provide funds for the maintenance of law enforcement officers are for a general public purpose, and hence of general public interest. Southern Ry. Co. v. Mecklenburg, 231 N. C. 148, 56 S. E. 2d 438.

In the case of State, ex rel. Glenn, etc., v. Crockett, etc., 88 Okl. 124, 206 P. 816-817, the court cited with approval the following definition of public interest used in the case of State, ex rel. Freeling, v. Lyons, 63 Okl. 285, 165 P. 419, at page 420:

"We understand 'public interest' to mean more than a mere curiosity: it means something in which the public, the community at large, has some pecuniary interest, or some interest by which their legal rights or liabilities are affected. It does not mean anything so narrow as the interests of the particular localities, which may be affected by the matters in question."

As we view the problem before us, we do not deem the legislation which changed the land of Mrs. Ross from a two-family residence zone to a local retail business zone to be of general public interest.

With this view of the case now before us, it is not necessary to proceed further in our discussion, nor to raise the question of spot zoning, which was injected into the case as the reason for the belief that this legislation is invalid.

The judgment of this court is that the writ of mandamus must be allowed to compel the commissioner of buildings, defendant herein, to issue the permit applied for by Mrs. Ross.

Writ allowed as prayed for.

DOYLE, PJ, GRIFFITH, J, concur.