STATE ex rel. ATHENS COUNTY DEPARTMENT OF
HUMAN SERVICES, Appellant;  Martin et al.

v.

WOLF, Appellee.

[Cite as *State ex rel. Athens Cty. Dept. of Human
Serv. v. Wolf* (1991), 77 Ohio App.3d 619.]

Court of Appeals of Ohio,
Athens County.

No. 1462.

Decided Oct. 9, 1991.

*Thomas Taggart,* Assistant Prosecuting Attorney, for appellant.

*Jack Oakley,* for appellee.

STEPHENSON, Presiding Judge.

This is an appeal from a judgment entered by the Athens County Court of Common Pleas, Juvenile Division, dismissing a complaint filed by the Athens County Department of Human Resources, plaintiff below and appellant herein, wherein it sought to establish that Bryan Scott Wolf, defendant below and appellee herein, was the father of one Joshua Anthony Martin. Appellant assigns the following errors:

"1.  Title IV–A, and IV–D, of the Social Security Act (1975), 42 USC 601–615, 651–666 as amended, have federally preempted R.C. 3111.04(A) to the extent that the state statute cannot prevent the Athens Child Support Enforcement Agency (the designated Title IV–D agency) or the Athens Department of Human Services (the designated Title IV–A agency) from bringing an action to establish paternity and thus recover support for a child receiving Aid for Dependent Children funds. The Juvenile Court, therefore, committed error in dismissing this action based on this statute.

"2. The State has a legitimate interest in the welfare of a child who has been deprived of support from one parent. Therefore, the State is always a proper party to initiate a paternity action, and R.C. Section 3111.07 should be read in pari materia with R.C. 3111.04 to allow the State to bring the parentage action. Therefore, the Juvenile Court committed error by refusing to find the State a proper party to initiate this action.

"3. Ohio Revised Code Section 3111.04 is unconstitutional under Article I, Section 2, of the Ohio Constitution. The state can establish a support order for legitimate children deprived of paternal support. The operation of the statute prevents the State from bringing a parentage action and thus establishing a support order for illegitimate children. Therefore, R.C. Section 3111.04 is denying illegitimate children the 'equal protection and benefits' of Ohio law. The Juvenile Court committed error by dismissing this action.

"4. Ohio Revised Code Section 3111.04 is unconstitutional under the equal protection clause of the Fourteenth Amendment to the U.S. Constitution because it prevents the State from establishing a support order for illegitimate children. Since the State can establish a support order for legitimate children, the State cannot constitutionally deny illegitimate children opportunity to obtain parental support, *Mills v. Habluetzel* (1982), 456 U.S. 91, 71 L.Ed.2d 770, 102 S.Ct. 15489 [*sic*, 1549]; *Clark v. Jeter* (1988), 486 U.S. 456, 100 L.Ed.2d 465, 108 S.Ct. 2197 [*sic*, 1910]. Therefore, if R.C. 3111.04 limits the State from bringing a parentage action it must fall as against the equal protection rights of illegitimate children. The Juvenile Court, therefore, committed error by dismissing this action."

The following facts are pertinent to this appeal. Melody Martin gave birth to Joshua Anthony Martin on February 26, 1987. Melody applied in Athens County for welfare and Aid to Families with Dependent Children when she reached the age of eighteen. As a condition to receive the aid, Melody assigned her right to receive child support to appellant. On March 8, 1990, appellant filed a complaint in the court below pursuant to R.C. 3111.04 wherein it claimed that appellee was the natural father of Joshua. Appellee answered on March 9, 1990, wherein he argued, *inter alia*, that the cause of action should be dismissed because the state is not authorized by R.C. 3111.04 to file a parentage action.

A hearing was held before a referee on April 19, 1990, following which the referee recommended that the case be dismissed. Appellant filed objections to the referee's report on June 12, 1990, arguing that it did have standing to initiate a parentage action and that a more restrictive reading of R.C. 3111.04 would render the statute unconstitutional. By way of entry dated August 3,

1990, the court below overruled appellant's objections and adopted the referee's report.

In its first assignment of error, appellant contends that R.C. 3111.04[1] is preempted by federal law, to wit, Title IV–A and Title IV–D of the Social Security Act of 1975, codified in Sections 601 through 615 and 651 through 666, Title 42, U.S. Code. In the case *sub judice,* Melody Martin assigned her right to receive child support to appellant as a condition of receiving Aid to Families with Dependent Children (hereinafter referred to as "AFDC"). The AFDC program was established by Congress as part of the Social Security Act of 1975. Title IV–D of that Act, entitled, "Child Support and Establishment of Paternity," requires, pursuant to Section 652(g), Title 42, U.S. Code, each state to have established by October 1, 1991 paternity for at least fifty percent of all children born out of wedlock who are receiving AFDC. Appellant contends that unless the state is able to file parentage actions, it will be unable to comply with the mandates of Section 652(g). Thus, concludes appellant, the federal law preempts R.C. 3111.04.

Although we do not believe that appellant's argument has any merit, we need not address this issue. In its objections to the referee's report, appellant never asserted that federal law preempted R.C. 3111.04. The Ohio Supreme Court has held, in several criminal cases, that failure to raise an issue before the lower court precludes raising that issue on appeal. *State v. Comen* (1990), 50 Ohio St.3d 206, 211, 553 N.E.2d 640, 645; *State v. Awan* (1986), 22 Ohio St.3d 120, 122, 22 OBR 199, 201, 489 N.E.2d 277, 279. The same appears to be true in civil cases as well. See *Lakewood v. All Structures, Inc.* (1983), 13 Ohio App.3d 115, 116, 13 OBR 133, 134, 468 N.E.2d 378, 379; see, also, *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 170–171, 522 N.E.2d 524, 526–527. Thus, a long-held axiom of appellate review has been that a theory upon which parties have proceeded in a lower court must generally be adhered to on appeal. See, *e.g., Bd. of Edn. v. Nolte Tillar Bros. Constr. Co.* (1943), 71 Ohio App. 469, 476, 26 O.O. 379, 382, 49 N.E.2d 99, 102; *Willett v. Rowekamp* (1937), 58 Ohio App. 465, 466, 12 O.O. 80, 80, 16 N.E.2d 797, 798; *Planter's Bank & Trust Co. v. Fifth Third Union*

---

1. R.C. 3111.04 reads as follows:

"(A) An action to determine the existence or nonexistence of the father and child relationship may be brought by the child or child's personal representative, the child's mother or personal representative, a man alleged or alleging himself to be the child's father, or the alleged father's personal representative.

"(B) An agreement does not bar an action under this section.

"(C) If an action under this section is brought before the birth of the child and if the action is contested, all proceedings, except service of process and the taking of depositions to perpetuate testimony, may be stayed until after the birth."

*Trust Co.* (1937), 56 Ohio App. 309, 315, 9 O.O. 297, 299, 10 N.E.2d 935, 939; *Hiller v. Shaw* (1932), 45 Ohio App. 303, 305, 187 N.E. 130, 131–132. Accordingly, because appellant did not raise the issue of federal preemption in the court below, it cannot now raise it on appeal. Appellant's first assignment of error is overruled.

█ In its second assignment of error, appellant argues that it had standing to institute a parentage action. It contends that R.C. 3111.04 must be read *in pari materia* with R.C. 3111.07. Appellant maintains that the General Assembly, through recent revisions in the Revised Code, intends to make the state a party to all actions involving child support.

We agree that appellant has an interest in a potential parentage action involving Joshua Martin. However, contrary to appellant's contention, it has no standing. R.C. 3111.04 states that a child, the child's mother, a person alleged to be the child's father, or a personal representative of any of those three persons may maintain an action to determine the existence of the father-child relationship. No other persons are named as having standing to file such an action. We further do not believe that R.C. 3111.07(B) supports appellant's position:

"(B) If an action is brought pursuant to sections 3111.01 to 3111.19 of the Revised Code and the child to whom the action pertains is or was being provided support by the department of human services, a county department of human services, or another public agency, the department, county department, or agency may intervene for purposes of collecting or recovering the support."

Appellant contends that since the above language allows it to intervene in parentage actions, if that section is read in conjunction with R.C. 3111.04, it is clear that the legislature intended for county departments of human services to initiate such actions. We disagree.

"The question regarding what the General Assembly intended to enact will not be entertained when the meaning of what was enacted is clear and plainly expressed." *Holiday Inns, Inc. v. Limbach* (1990), 48 Ohio St.3d 34, 36, 548 N.E.2d 929, 932. The language in R.C. 3111.04 and R.C. 3111.07 is clear. There are six categories of persons who may initiate a parentage action and, once such an action is begun, the department of human services may intervene under certain circumstances. There is no other interpretation of the statute which would be reasonable. It is a long-settled principle that "[a]bsent ambiguity, statutory language is not to be enlarged or construed in any way other than that which its words demand." *Kneisley v. Lattimer–Stevens Co.* (1988), 40 Ohio St.3d 354, 357, 533 N.E.2d 743, 746; *Hough v. Dayton Mfg. Co.* (1902), 66 Ohio St. 427, 64 N.E. 521.

We further note that even if we consider the issue of intent, we do not think the General Assembly intended for a county department of human services to file parentage actions. The legislature was certainly aware of the possible interest of a county agency since it allowed for intervention. However, the specific language of R.C. 3111.04 omits such agencies from the class of persons who have standing to initiate a parentage action. By its inclusion in one section and omission in another section, it is clear that the General Assembly intended for a county department of human services only to intervene after the commencement of a parentage action by a proper party. We conclude, therefore, that appellant had no standing to initiate a parentage action. This conclusion is consistent with that of at least one other court of appeals. See *Washington v. Gregory* (Feb. 19, 1985), Clinton App. No. CA84–06–022, unreported, 1985 WL 8179.

We finally note that appellant's concerns should be directed to the General Assembly. We agree with appellant that to allow it and other county departments of human services to initiate parentage would facilitate compliance with the federal mandates set forth above. Several other states have apparently come to this conclusion and enacted such legislation. See, *e.g.*, West's Cal.Civ.Code Ann. 7006(g) (California); Colo.Rev.Stat.Ann. 19–4–107 (Colorado); 13 Del.Code 805(a) (Delaware); Haw.Rev.Stat. 584–6(a) (Hawaii); Ill.Ann.Stat., Chapter 40, Section 2507 (Illinois); Kan.Stat.Ann. 39–755 (Kansas); La.Stat.Ann. 46:236.1(F) (Louisiana); Mass.Gen.Laws Ann. 209C, Section 5(a) (Massachusetts); Mich.Comp.Laws Ann. 722.714(8) (Michigan); Minn.Stat. Ann. 257.57, subd. 2 (Minnesota); Nev.Rev.Stat. 126.071(1) (Nevada); N.J.Stat. Ann. 9:17–45(a) (New Jersey); N.Mex.Stat.Ann. 40–11–7(A) (New Mexico); 15 Vt.Stat.Ann. 302(a) (Vermont); Va.Code 1950, Section 20–49.2 (Virginia); West's Rev.Code of Wash.Ann. 26.26.060(1)(a) (Washington); Wyo.Stat. 20–6–106(b) (Wyoming).

However, given the fact that Ohio has no such provision and that appellant has cited no authority which would grant appellant standing under current Ohio law, we hold that appellant was not a proper party to initiate a parentage action. For the aforementioned reasons, appellant's second assignment of error is overruled.

In its third and fourth assignments of error, appellant contends that R.C. 3111.04 is unconstitutional under both the state and federal Constitutions in that it treats illegitimate children differently than legitimate children. Basically, appellant asserts that legitimate children can more easily obtain support orders than can illegitimate children.

Before we address the merits of these two assignments of error, we must determine whether appellant has standing to raise the constitutional

issues. Appellant first contends that it has standing to raise these issues because it has a pecuniary interest in having Joshua's parentage determined. However, appellant is not asserting that the statute is unconstitutional because it prevents appellant from collecting child support; appellant contends that the statute violates Joshua's right to equal protection.[2]

Generally, to have standing to raise an issue, a party must allege that the challenged action caused it injury in fact and that the interest asserted is within the scope of interests protected by the statute. *State ex rel. Dayton Newspapers, Inc. v. Phillips* (1976), 46 Ohio St.2d 457, 75 O.O.2d 511, 351 N.E.2d 127; *Ohio Bldg. Chapter, AGC v. McGee* (Dec. 19, 1985), Franklin App. No. 85AP–158, unreported, 1985 WL 4584. In the case at bar, the injury asserted is not to appellant, but instead to Joshua. Thus, appellant does not satisfy the first requirement.

■ Appellant contends that under some circumstances, the state, or an agent thereof, may assert constitutional issues in cases where it ordinarily has no standing. Appellant argues that it may raise the issue where the matter is one of general public interest, citing *State ex rel. Bruestle v. Rich* (1953), 159 Ohio St. 13, 20–21, 110 N.E.2d 778, 783–784. However, since the theory of standing espoused by appellant is the exception to the general rule that a state agency may not challenge as parens patriae the constitutionality involving the performance of its duties, see 16 American Jurisprudence (1979) 197–198, Constitutional Law, Section 198, we must narrowly construe it.

There is very little case law which defines the phrase, "general public interest." In one Ohio case, the Court of Appeals for Cuyahoga County in *State ex rel. Ross v. Guion* (1959), 82 Ohio Law Abs. 1, 161 N.E.2d 800, stated the following at 4, 161 N.E.2d at 803:

"In the case of *State ex rel. Glenn v. Crockett,* 86 Okl. 124, 206 P. 816–817, the court cited with approval the following definition of public interest used in the case of *State ex rel. Freeling v. Lyon,* 63 Okl. 285, 165 P. 419, at page 420:

" 'We understand "public interest" to mean more than a mere curiosity; it means something in which the public, the community at large, has some pecuniary interest, or some interest by which their legal rights or liabilities

---

**2.** We note that if appellant is alleging that it is vicariously being denied equal protection as a result of Joshua's being denied equal protection, that argument too must fail. It is well settled that a political subdivision has no standing to assert equal protection claims against the state. See *State ex rel. Zupancic v. Limbach* (1991), 58 Ohio St.3d 130, 137, 568 N.E.2d 1206, 1212; *Avon Lake City School Dist. v. Limbach* (1988), 35 Ohio St.3d 118, 122, 518 N.E.2d 1190, 1193.

are affected. It does not mean anything so narrow as the interests of the particular localities, which may be affected by the matters in question.'"

The case *sub judice* is not such a case. The community at large has no pecuniary interest in the determination of parentage. Further, the community at large has no legal rights or liabilities affected. The state has an interest in determining parentage because it could be reimbursed for support payments made to the child. However, that has no direct effect on the general public. We, therefore, hold that since R.C. 3111.04 does not involve an issue of "general public interest," and since appellant has no independent standing, appellant cannot assert potential constitutional violations of Joshua's right to equal protection under the laws. Appellant's third and fourth assignments of errors are overruled.

Accordingly, for the aforementioned reasons, the judgment of the court below is affirmed.

*Judgment affirmed.*

GREY and HARSHA, JJ., concur.