The STATE ex rel. GILLION et al.; Cuyahoga
Support Enforcement Agency, Appellant,

v.

REESE et al., Appellees.

[Cite as *State ex rel. Gillion v. Reese* (1994), 97 Ohio App.3d 315.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 66322 and 66465.

Decided Sept. 6, 1994.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, *Lynne A. Yohe* and *Timothy R. Brown,* Assistant Prosecuting Attorneys, for appellant.

*Tamika Gillion, pro se.*

*Janice Minter, pro se.*

*Michael Reese, pro se.*

*Darrell Hawkins, pro se.*

----

HARPER, Judge.

Appellant, Cuyahoga Support Enforcement Agency ("CSEA"), appeals from the judgments of the Cuyahoga County Court of Common Pleas, Juvenile Division, in case No. 66322 and case No. 66465, which cases are consolidated for appellate disposition. For the reasons that follow, we affirm both judgments.

The issue presented by the two appeals is whether CSEA pursuant to Ohio law is a proper party in interest in an action to recover funds disbursed in support of a child by the Cuyahoga County Department of Human Services ("DHS"), when such support is the duty and responsibility of another. We answer the question in the negative.

I

The pertinent facts of the two cases, which are identical in all aspects except the names of the defendants, are as follows:

### Case No. 66322, Lower Case No. 9370093

On March 12, 1993, CSEA filed an action to establish a child/parent relationship between the minor child, Markutta Gillion, born August 22, 1989, and the defendant, the alleged father, Michael Reese. The hearing was scheduled for June 29, 1992. Reese failed to appear at the hearing. The court determined that a parent/child relationship existed between the minor child, Markutta, and Reese. The court granted current support through CSEA. The court denied past care to CSEA because DHS was not made a party to the action. CSEA appealed.

II

### Case No. 66465, Lower Case No. 9370190

On April 6, 1993, CSEA again filed an action to establish a child/parent relationship between the minor child, Vance Minter, born June 19, 1980, and

defendant, Darrell Hawkins. Included in the complaint, as in case No. 66322, was a request by CSEA for past child support and care. The court established a parent/child relationship but denied CSEA's request for reimbursement of past support and care. The court held that CSEA was not a proper party in interest to demand past support and care and granted a ten-day leave to DHS to intervene and file a claim for reimbursement of past support and care. DHS failed to intervene. CSEA also appealed.

The record shows that the mother in each case received assistance from DHS.

### III

In case No. 66322, appellant assigns the following error for review:

"The Court abused its discretion by not allowing recovery of past care to the Cuyahoga Support Enforcement Agency which brought this paternity action to establish paternity and recover all due support to the County and the mother."

In case No. 66465, appellant assigns the following errors for review:

"I. Whether or not the trial court erred in denying the State of Ohio Department of Human Services' claim for public assistance reimbursement when it is not named as a party in the case and the CSEA is acting as its agent.

"II. Whether or not the trial court erred in its conclusion pursuant to Section 3111.07(B) of the Ohio Revised Code and Ohio Civ. Rule 24, that the Ohio Department of Human Services must intervene in the case to collect reimbursement of public assistance funds.

"III. Whether or not the trial court erred in its failure to, on its own accord, join the Department of Human Services as a party pursuant to Rule 21 of the Ohio Civil Rules of Procedure for the state to collect public assistance reimbursement."

Since all of appellant's assignments of error address one issue, they will be treated together.

Appellant argues that the trial court erred in denying its claim for reimbursement of past support and care for the minor children because such action is authorized by R.C. 3111.04, 3111.07, 2301.35, and 5101.31. We disagree.

We shall begin by attempting to give meaning and understanding to the provisions of the statutes, as it is our understanding that CSEA has given the statutes broader interpretation than intended by the legislature. R.C. 3111.04 provides in pertinent part as follows:

"(A) An action to determine the existence or nonexistence of the father and child relationship may be brought by the child or the child's personal representative, the child's mother or her personal representative, a man alleged or alleging

himself to be the child's father, the child support enforcement agency of the county in which the child resides if the child's mother is a recipient of public assistance as defined in section 2301.351 of the Revised Code or of services under Title IV–D of the 'Social Security Act,' 88 Stat. 2351 (1975), 42 U.S.C.A. 651, as amended, or the alleged father's personal representative.

" * * *

"(D) A recipient of public assistance as defined in section 2301.351 of the Revised Code or of services under Title IV–D of the 'Social Security Act,' 88 Stat. 2351 (1975), 42 U.S.C.A. 651, as amended, shall request the child support enforcement agency of the county in which a child resides to make an administrative determination of the existence or nonexistence of a parent and child relationship between the father and the child pursuant to section 3111.22 of the Revised Code before the recipient commences an action to determine the existence or nonexistence of that parent and child relationship."

R.C. 3111.22 also provides in pertinent part as follows:

"(A)(1) Except as otherwise provided in division (A)(2) of this section, no person may bring an action under sections 3111.01 to 3111.19 of the Revised Code before requesting an administrative determination of the existence or nonexistence of a parent and child relationship from the child support enforcement agency of the county in which the child or the guardian or legal custodian of the child resides.

" * * *

"[C][5](e) If the alleged natural father or the natural mother willfully fails to submit to genetic testing or if either parent or any other person who is the custodian of the child willfully fails to submit the child to genetic testing, the agency shall enter an administrative order stating that it is inconclusive as to whether the alleged natural father is the natural father of the child and shall provide notice to the parties that an action may be brought under sections 3111.01 to 3111.19 of the Revised Code to establish a parent and child relationship."

The Ohio Supreme Court held in *Hulett v. Hulett* (1989), 45 Ohio St.3d 288, 544 N.E.2d 257, that the provisions of R.C. Chapter 3111 are *in pari materia* and must be construed together, the reason being that it is so easy for a party to pick only one section of the chapter that fits his argument and to attempt to persuade the court that his contention is statutorily supported. CSEA is attempting to do that which the *Hulett* court recognized when that court intimated that a better understanding of R.C. Chapter 3111 would be achieved by viewing the chapter as a whole. CSEA argues that it is statutorily authorized to initiate an action against an absent father to establish a parent/child relationship. Since this is a

partially correct statement of the provisions of R.C. 3111.04, we shall attempt to bring CSEA's understanding of its authority to file such action in line with the statute.

It must be made unmistakably clear that an action to establish a parent/child relationship is a private matter between the three people involved: the child, the mother and the alleged father. The state's interference is permitted only within those limited circumstances as proscribed by the statute. Thus, under R.C. 3111.04, CSEA may bring an action to establish a parent/child relationship in only one instance: when the child's mother is a recipient of public assistance, but only after the mother has requested an administrative determination. When the request for an administrative determination is made and the alleged father or the natural mother fails to submit to genetic testing, CSEA in the name of the mother may bring an action in court to establish parentage. See R.C. 3111.22(C)(5)(e). The action brought by CSEA on behalf of the mother remains in the mother's name. At no time is CSEA given independent authority to initiate an action to establish a parent/child relationship without the mother's initial request. See *State ex rel. Athens Cty. Dept. of Human Serv. v. Wolf* (1991), 77 Ohio App.3d 619, 603 N.E.2d 252.

The provisions of R.C. 3111.07 remain true even after the 1992 amendment that the proper parties in action to establish parent/child relationship are (1) the natural mother; (2) each man presumed to be the father; and (3) each man alleged to be the natural father. However, in any case where the initiator of the action is a recipient of public assistance or if the support obligation has been determined, in a case initiated by a nonrecipient of public assistance, CSEA must be made a party. The logical explanation of R.C. 3111.07 is that CSEA cannot initiate an action in its name but can be made a party to an action initiated by the proper parties, including an action it files in the name of the mother. Therefore, we hold that outside the limited circumstances as prescribed by R.C. 3111.04, CSEA has no standing to initiate a parentage action.

## IV

In turning to the main issue before us, CSEA argues that it is authorized by law to pursue public assistance reimbursement claims. It attempts to bolster its argument by reasoning that it is the agent of DHS for purposes of seeking reimbursement of past support and care by virtue of an agreement made between the two agencies. Even by the provisions of the agreement in question, which has no force of the law, CSEA is to represent DHS only in obtaining and enforcing medical support judgments. The agreement does not authorize CSEA to initiate an action for reimbursement of past support and care of a child under public assistance as it leads us to believe.

R.C. 5107.04(C) states that:

"The county department of human services shall take action to recover erroneous payments, which may include instituting a civil action. Whenever aid has been furnished to a recipient for whose support another person is responsible such other person shall, in addition to the liability otherwise imposed, as a consequence of failure to support such recipient, be liable for all aid furnished to such recipient. The value of the aid so furnished may be recovered in a civil action brought by the county department."

In *Vance v. Banks* (1994), 94 Ohio App.3d 475, 481, 640 N.E.2d 1214, 1217, this court held that:

"*Under R.C. 5107.04(C) the legislature has exclusively authorized the DHS to recover funds already disbursed in support of a child when the support is the duty and responsibility of another person, Crittendon v. Crittendon* (1992), 82 Ohio App.3d 484, 489, 612 N.E.2d 759, 762." (Emphasis added.)

R.C. 3111.15 also provides in pertinent part as follows:

"(A) If the existence of the father and child relationship is declared or if paternity or a duty of support has been adjudicated under sections 3111.01 to 3111.19 of the Revised Code or under prior law, the obligation of the father may be enforced in the same or other proceedings by the mother, the child, or the public authority that has furnished or may furnish the reasonable expenses of pregnancy, confinement, education, support, or funeral, or by any other person, including a private agency, to the extent that any of them may furnish, has furnished, or is furnishing these expenses."

██ It is thus clear that the right to seek enforcement of the father's obligation for past support and care is given by statute only to the party who provided the support. Any other interpretation would be inconsistent with an unambiguous statutory provision that requires no further construction. The record before us reveals that DHS provided all of the support for the minor children, which, therefore, makes DHS as a matter of law the only public authority that can seek reimbursement for the past support and care it provided. Our reasoning is further bolstered by 1987 Ohio Atty.Gen.Ops. No. 87–033, paragraph one of the syllabus, which states:

"Where a county prosecuting attorney, either in his official capacity or under a cooperative agreement with the local title IV–D agency, provides legal services pursuant to Title IV–D of the Social Security Act, as amended, 42 U.S.C. 651–667 (1985), if the person who is owed child or spousal support has assigned or subrogated his right to receive support payments to this or any other state or to an agency, department, or political subdivision of this or any other state as a condition to the receipt of public assistance, then the client of the prosecutor is

the state or agency, department or political subdivision of the state which has provided the assistance."

Although this court is not bound by the advisory opinion of the Attorney General, and do not consider it the law of the state, we, however, agree with the statement of the law contained therein, especially as it relates to the provisions of R.C. 5107.04(C) and 3111.15, which make DHS the only state-agency client of the prosecutor, authorized by law to seek reimbursement of past child support and care of the minor children in the case *sub judice.*

CSEA's agency theory, therefore, is unpersuasive. Where the statute is plain on its face and in its meaning, courts are forbidden from rendering the statute ambiguous in an attempt to further add meaning to the intent of the General Assembly. See *Holiday Inns, Inc. v. Limbach* (1990), 48 Ohio St.3d 34, 36, 548 N.E.2d 929, 932; see, also, *Kneisley v. Lattimer–Stevens Co.* (1988), 40 Ohio St.3d 354, 533 N.E.2d 743; *Hough v. Dayton Mfg. Co.* (1902), 66 Ohio St. 427, 64 N.E. 521.

Assuming *arguendo* that we subscribe to CSEA's agency theory, we, however, hold that DHS has no statutory power to enact rules, or regulations, or enter into an agreement with any state agency in contradiction to the laws as enacted by the Ohio legislature. When such rules or regulations are enacted, or agreements entered into, to the extent that they contravene the statute, they are invalid *ab initio.*

It is our opinion that the Ohio legislature knows the different functions of DHS and CSEA. It created them. It is therefore only the General Assembly that has the authority to determine the functions of the agencies it creates and how the agencies carry out their functions. See R.C. 5107.04(C) and 5101.31. Once the General Assembly has properly performed its legislative duty, courts must accord such legislation its constitutional due, without unwanted interference.

Unless and until the Ohio General Assembly in its wisdom decides to amend the functions of CSEA to include initiating actions to seek reimbursement for past child support and care of a minor child after a parental relationship has been established, CSEA has no standing to initiate such action. Thus, DHS remains the agency with the exclusive legal authority to recover funds already disbursed in support of a child, when such support is the duty and responsibility of another person. *Vance v. Banks, supra.*

All of appellant's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

BLACKMON, P.J., and MATIA, J., concur.